IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RHODES ENTERPRISES, LLC, D/B/A/ MIDDLE TENNESSEE FREIGHT, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) NO. 3-14-1723 ) JUDGE CAMPBELL ) |
| FINANCIAL CARRIER SERVICES, INC., | ) ) ) |
| and | ) ) |
| RICKIE WILLIAMS, individually, D/B/A/ RICKIE WILLIAMS TRUCKING, | ) ) ) ) |
| Defendants. | ) |

MEMORANDUM

Pending before the Court are Defendants' Motions to Dismiss (Docket Nos. 5 and 8). For the reasons stated herein, Defendants' Motions are GRANTED, and this action is DISMISSED without prejudice.

FACTS

Plaintiff, a Tennessee limited liability company, filed this action against Defendant Financial Carrier Services, Inc., a Florida corporation ("FCS"), and Rickie Williams d/b/a Rickie Williams Trucking, an Alabama sole proprietorship ("RW Trucking"), based upon (1) an oral agreement for Plaintiff to perform work as a subcontractor of R.W. Trucking in the transportation of freight across the United States (the "Trucking Agreement"), and (2) a written

contract between R.W. Trucking and FCS for the provision of factoring services (the "Factoring Agreement").[1] Plaintiff contends that R.W. Trucking breached the Trucking Agreement by failing to pay Plaintiff for services rendered. Plaintiff contends, based upon an allegation of third party beneficiary status, that FCS breached the Factoring Agreement by failing to pay Plaintiff for the same services rendered. Plaintiff also alleges that both RW Trucking and FCS are liable to Plaintiff under the theories of conversion, quantum meruit, and unjust enrichment.

Jurisdiction in this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. Plaintiff alleges that venue is proper in this Court pursuant to 28 U.S.C. § 1391. Defendants have moved to dismiss the action for lack of personal jurisdiction.[2] Defendants contend that they have insufficient contacts with Tennessee for Plaintiff to carry its burden of establishing a basis for either general or specific personal jurisdiction.

PERSONAL JURISDICTION

The procedural structure which guides the district court in ruling upon Rule 12(b) motions to dismiss for lack of personal jurisdiction is well-settled. Plaintiff bears the burden to establish that jurisdiction exists. <u>Theunissen v. Matthews</u>, 935 F.2d 1454, 1458 (6th Cir. 1991). Plaintiff must do so for each defendant independently. <u>Days Inns Worldwide, Inc. v. Patel</u>, 445

---

[1] A "factoring company" such as FCS pays trucking companies up front for the freight or cargo hauling services provided by those companies in exchange for a commission. The factoring company collects payments from individual vendors to whom such services are provided. Trucking companies bill a factoring company directly for services rendered and receive payment from the factoring company in return. <u>See</u> Complaint (Docket No. 1), ¶ 7-8.

[2] Defendants also move the Court to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because the Court resolves this matter based upon the threshold issue of personal jurisdiction, the Court need not discuss this alternative basis for relief.

F.3d 899, 904 (6th Cir. 2006) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

Where, as here, a district court rules on a jurisdictional motion to dismiss made pursuant to Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the nonmoving party. Beydoun v. Wataniya Restaurants Holding, Q.S.C., 768 F.3d 499, 504 (6th Cir. 2014) (citing CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996)). The Court must not consider facts proffered by Defendants which conflict with those offered by the Plaintiff. Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002). Plaintiff must make only a prima facie showing of jurisdiction that personal jurisdiction exists in order to defeat dismissal. Beydoun, 768 F.3d at 504. Here, Plaintiff can meet that burden by establishing with reasonable particularity sufficient contacts between Defendants and Tennessee to support jurisdiction. Neogen, 282 F.3d at 887. Dismissal in this procedural posture is proper only if all of the specific facts which Plaintiff alleges collectively fail to state a prima facie case for jurisdiction. Kerry Steel, Inc. v. Paragon Industries, Inc., 106 F.3d 147, 149 (6th Cir. 1997).[3]

A federal court sitting in a diversity action must apply the law of the forum state to determine whether it may exercise jurisdiction over the person of a non-resident, subject to constitutional limitations. Reynolds v. Int'l Amateur Athletic Federation, 23 F.3d 1110, 1115 (6th Cir. 1994) (citing Welsh v. Gibbs, 631 F.2d 436, 439 (6th Cir. 1980)). A federal court's

---

[3] Neither Plaintiff nor FCS filed an affidavit in connection with the briefing of the pending motions. Defendant RW Trucking has filed the affidavit of Rickie Williams (the "Williams Affidavit"). The Court, therefore, limits its consideration of the facts of this matter to the allegations made in the Complaint and the statements contained in the Williams Affidavit.

exercise of personal jurisdiction in a diversity of citizenship case must therefore be both (1) authorized under the forum state's long-arm statute, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." Beydoun, 768 F.3d at 504 (quoting Neogen, 282 F.3d at 888). In Tennessee, the long-arm statute extends the personal jurisdiction of the Tennessee courts to the maximum allowed under the U.S. Constitution. Welsh, 631 F.2d at 439 (citing Pickens v. Hess, 573 F.2d 380, 385 (6th Cir. 1978)); Williams v. Firstplus Home Loan Owner Trust 1998-4, 310 F. Supp. 2d 981, 990 (W.D. Tenn. 2004); see also Tenn. Code. Ann. § 20-2-214(a)(6) (2004).

In order for there to be jurisdiction consistent with due process, a defendant must have sufficient "minimum contacts" with Tennessee such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." Neal v. Janssen, 270 F.3d 328, 331 (6th Cir. 2001) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Personal jurisdiction may be either general or specific, depending on the nature of the defendant's contacts with the forum state. Third Nat'l Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989).

General personal jurisdiction arises when a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the forum state. Id. The U.S. Supreme Court has recently clarified that such "continuous and systematic" activity within the forum state must be so extensive as to render a defendant "essentially at home" there. Daimler AG v. Bauman, __ U.S. __, 134 S.Ct. 746, 760-61, 187 L.Ed.2d 624 (2014) (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, __ U.S. __, 131 S.Ct. 2846, 2851, 180

4

L.Ed.2d 796 (2011)). The Supreme Court noted that this typically requires a showing that the non-resident defendant is either incorporated in the forum state or maintains a principal place of business there. Id. Absent exceptional circumstances, any broader formulation of the criteria for general personal jurisdiction is "unacceptably grasping." Id.

Specific jurisdiction arises when a defendant has sufficient minimum contacts that arise from or are related to the cause of action. Williams, 310 F. Supp. 2d at 991. This requirement is met if (1) the defendant purposefully availed himself of the privilege of acting in the forum state or intentionally caused a consequence in the forum state, (2) the cause of action arose from the defendant's activities in the forum state, and (3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable. Neogen, 282 F.3d at 889; (citing S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir.1968)).

The most important of these criteria is purposeful availment – the "constitutional touchstone" of specific personal jurisdiction. Neogen, 282 F.3d at 889; Kerry, 106 F.3d at 150. The purposeful availment requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum state, and when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. Bridgeport Music, Inc. v. Still N The Water Publishing, 327 F.3d 472, 478 (6th Cir. 2003).[4]

---

[4] The existence of a contract with a citizen of the forum state, standing alone, is not sufficient to confer personal jurisdiction over a foreign defendant. Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., LTD, 91 F.3d 790, 795 (6th Cir. 1996) (citing Burger King, 471 U.S. at 478). Rather, prior negotiation and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must be evaluated in determining whether the

Purposeful availment requires something more than a passive benefit from the forum state's opportunities. Id.; Neogen, 282 F.3d at 891. The purposeful availment requirement "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Furthermore, it ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person. Neogen, 282 F.3d at 889.

A.  Defendant RW Trucking

Plaintiff's Complaint alleges that, in March of 2014, Plaintiff entered into the oral Trucking Agreement with RW Trucking "for the purposes of obtaining freight jobs across the United States." Compl., ¶ 6. The Complaint alleges that Plaintiff and RW Trucking "opened a joint bank account for the purposes of receiving funds owed for services performed." Id. As consideration for the use of RW Trucking's Motor Carrier Number, Plaintiff paid RW Trucking $5,000 per month during the two and one-half month existence of the Trucking Agreement. Id. The Complaint also alleges that, during the period of March through May 2014, Plaintiff completed numerous trucking orders. Id., ¶ 8. The Complaint does not, however, specify where any alleged contractual performance occurred. Id., passim. The Complaint is also silent concerning how and where the Trucking Agreement was negotiated or the bank account was opened. Id.

RW Trucking contends that it has no presence in Tennessee and has not committed any

---

defendant purposefully established minimum contacts within the forum state. Id.

6

act in or directed at Tennessee. RW Trucking maintains that all of the business transacted with Plaintiff occurred in Alabama, including the negotiation of the Trucking Agreement at an Alabama truck stop and the opening of a joint bank account at an Alabama bank branch. See Williams Aff. at 1-2 and Ex 1. Mr. Williams, the sole proprietor of RW Trucking, states under oath that he has never entered Tennessee or transacted any business there. Id.

Here, RW Trucking is an Alabama sole proprietorship with its principal place of business in Birmingham, Alabama. Compl., ¶ 5. RW Trucking conducts no business in Tennessee and thus has no offices or employees in Tennessee. Williams Aff. (Docket No. 8) at 1-2. RW Trucking does not offer, sell or manufacture goods or services in Tennessee. Id. There has been no showing that any employee of RW Trucking has ever been in Tennessee for the purpose of conducting business. Accordingly, RW Trucking does not have the continuous and systematic presence in Tennessee required for the exercise of general personal jurisdiction. See Daimler, 134 S.Ct. at 751-61.

There is also no evidence that RW Trucking reached out to Tennessee or purposefully availed itself of the privilege of acting within this State. The existence of the Trucking Agreement alone is not sufficient to confer specific personal jurisdiction. Nationwide, 91 F.3d at 795. The Complaint is devoid of factual allegations concerning the negotiation or intended future consequences of the Trucking Agreement, aside from an acknowledgment that it was "expected to last no more than a few months." Compl., ¶ 6. In this factual vacuum, the evidence of RW Trucking bespeaks that it was Plaintiff who traveled to Alabama to negotiate the Trucking Agreement and open a bank account. See William Aff. at 1-2. Furthermore, while the Complaint generally alleges that Plaintiff undertook trucking orders as a subcontractor of RW

Trucking throughout the United States, it fails to allege any actual activity in Tennessee that could be attributed to RW Trucking. The Court finds no evidence that RW Trucking intended to establish "continuing relationships and obligations" in Tennessee. See Burger King, 471 U.S. at 473.

Plaintiff cannot satisfy the minimum contacts requirement by unilateral activity aimed at a non-resident defendant. Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir. 1988). It is RW Trucking which must purposefully avail itself of the privilege of conducting activities within Tennessee. Id. Given that there is no evidence of purposeful availment by RW Trucking, Plaintiff cannot meet its burden of establishing with reasonable particularity sufficient contacts between RW Trucking and Tennessee to support the exercise of specific personal jurisdiction.

B.   Defendant FCS

Plaintiff's Complaint alleges that FCS "[does] business throughout the United States." Compl., ¶ 4. The Complaint also alleges that, pursuant to the Factoring Agreement between FCS and RW Trucking, FCS made approximately $90,000 in payments to Plaintiff for unspecified trucking orders during the two and one-half month existence of the Trucking Agreement. Id., ¶ 8. The Complaint does not allege the existence of any contract between Plaintiff and FCS; rather, Plaintiff claims to be a third-party beneficiary of the Factoring Agreement between FCS and RW Trucking. Id., ¶ 7. FCS, on the other hand, contends that it has no contacts with Tennessee beyond the alleged payments to Plaintiff.

Here, FCS is a Florida corporation with its principal place of business in Fort Lauderdale, Florida. Id., ¶ 4. There has been no allegation that FCS conducts any routine business in Tennessee or has offices or employees in Tennessee. There has been no allegation that FCS

offers, sells or manufactures goods or services in Tennessee. There has also been no showing that any employee of FCS has ever been in Tennessee for the purpose of conducting business. Accordingly, FCS does not have the continuous and systematic presence in Tennessee required for the exercise of general personal jurisdiction. See Daimler, 134 S.Ct. at 751-61.

The only evidence that FCS reached out to Tennessee or purposefully availed itself of the privilege of acting within this State is the alleged fact that FCS transmitted $90,000 in payments to Plaintiff while Plaintiff was a resident of Tennessee. However, the Complaint does not allege that those payments were mailed to Plaintiff in Tennessee, as opposed to, for example, deposited into the bank account opened in Alabama for purposes of the Trucking Agreement. Even if the Court were to assume Plaintiff received the payments in Tennessee, the mailing of income to a party in a forum state alone is insufficient to confer specific jurisdiction. See Hanson v. Denkla, 357 U.S. 235, 250-55 (1958). Accordingly, Plaintiff cannot meet its burden of establishing with reasonable particularity sufficient contacts between FCS and Tennessee to support the exercise of specific personal jurisdiction.[5]

---

[5] Plaintiff appears to contend that jurisdiction is proper because it is a third party beneficiary of the Factoring Agreement, and thus specific personal jurisdiction arises because Plaintiff seeks to remedy a breach of that agreement. This argument is a non-starter because the factual allegations of the Complaint preclude third party beneficiary status here. Specifically, the Complaint concedes that the Factoring Agreement was in place between FCS and RW Trucking prior to Plaintiff's dealings with either party. Under Tennessee law, the fundamental requirement of third party beneficiary status is that the relevant contract must be "made and entered into directly and primarily for the benefit" of the purported third party beneficiary. Owner-Operator Independent Drivers Ass'n, Inc. v. Concord EFS, Inc., 59 S.W.3d 63, 69 (Tenn. 2001). Because there is no allegation that either FCS or RW Trucking knew of Plaintiff's existence when they executed the Factoring Agreement, Plaintiff cannot claim to invoke jurisdiction over FCS to enforce the rights of RW Trucking vis a vis the Factoring Agreement. See Hanson, 357 U.S. at 244. Regardless, even if the Court were to indulge Plaintiff's third party beneficiary theory, Plaintiff still cannot allege facts concerning the Factoring Agreement – which was executed by parties foreign to Tennessee without any involvement of Tennessee

C.  Conclusion

The Court finds that Plaintiff has failed to carry its burden of establishing sufficient minimum contacts for this Court to assert general or specific personal jurisdiction over either Defendant. Accordingly, FCS's Motion to Dismiss (Docket No. 5) is GRANTED and RW Trucking's Motion to Dismiss (Docket No. 8) is GRANTED. This action is DISMISSED, without prejudice, for lack of personal jurisdiction. The Clerk of Court shall close the case.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

---

whatsoever – sufficient to establish minimum contacts that would make the exercise of jurisdiction comport with traditional notions of fair play and substantial justice. Int'l Shoe Co., 326 U.S. at 315.